**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **DEACON L. THOMAS**, | Case No. 1:14-cv-01627-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN** Commissioner of Social Security, | |
| Defendant. | |

Phillip W. Studenberg, Attorney at Law, P.C., 230 Main St., Klamath Falls, OR 97601. Of Attorneys for Plaintiff.

Billy J. Williams, Acting United States Attorney, and Ronald K. Silver, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97201-2902; Alexis L. Toma, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-7075. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Deacon L. Thomas seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for supplemental security income under Title XVI of the Social Security Act. For the following reasons, the Commissioner's decision is AFFIRMED.

PAGE 1 – OPINION AND ORDER

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Procedural History

Counsel for Plaintiff, Phil Studenberg, originally filed an opening brief that largely related to a different claimant for social security benefits. Plaintiff's brief began by asserting three errors committed by the ALJ: (1) improperly rejecting the opinions and ultimate

conclusions of Plaintiff's treating and examining physicians; (2) improperly giving great weight to the testimony of Dr. Darius Ghazi, a "medical witness"; and (3) improperly ignoring the diagnosis of fibromyalgia and Chronic Fatigue Syndrome. After the first sentence in the "Facts and Arguments" section, however, the brief filed by Mr. Studenberg purportedly on behalf of Plaintiff began discussing medical impairments that were not alleged by Plaintiff. The brief mentioned doctors and treatment not found in Plaintiff's record. The brief also cited to transcript pages that did not exist in Plaintiff's record. Opposing counsel contacted Mr. Studenberg, who explained that he had filed the "correct brief" but had accidentally included irrelevant text. The two attorneys agreed to strike the portion that did not pertain to Plaintiff. After the agreed-upon irrelevant language was stricken, all that remained in Plaintiff's original opening brief was the assertion of the three errors committed by the ALJ and one additional sentence. As such, the original brief did not offer any argument or evidence in support of Plaintiff's allegations.

Counsel for the Commissioner filed a response brief pointing out that the result of striking all but one sentence left nothing to support the assertions made by Plaintiff. Mr. Studenberg did not reply to the Commissioner's brief or seek leave from the Court to amend Plaintiff's opening brief. In an Order dated July 1, 2015, the Court provided Plaintiff the opportunity to file a supplemental opening brief supporting her claims. The Court set a deadline of September 4, 2015 for the supplemental brief. The Court also expressed "serious concerns" regarding Mr. Studenberg's representation of Plaintiff and ordered that the Court's opinion be sent to the Professional Liability Fund. On July 15, 2015, Mr. Studenberg filed a supplemental opening brief on behalf of Plaintiff. In response to Plaintiff's supplemental opening brief, the Commissioner notes that Plaintiff's brief, although containing facts relating to Plaintiff, offers

almost no specific argument or evidence supporting her claims. Mr. Studenberg did not file a reply brief.

Plaintiff's supplemental opening brief continues to raise serious concerns as to the adequacy of Mr. Studenberg's representation of Plaintiff. Although Plaintiff's supplemental brief provides little supporting argument and evidence, the Court finds that issues have been raised sufficiently for the Court to consider Plaintiff's claims on the merits.

## B.  Plaintiff's Application

Plaintiff filed an application for supplemental social security income, alleging disability beginning September 21, 2010. She was born on July 28, 1976, and was 36 years old at the time of her disability hearing. Plaintiff alleges disability due to degenerative disk disease and disorder, back injury, patellar femoral syndrome, knee injury, learning disability, depression, thyroid problems, and acid reflux. The Commissioner denied her application initially and upon reconsideration; thereafter, she requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ found Plaintiff not disabled. The Appeals Council declined Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff now seeks judicial review of that decision.

## C.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.,* 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 404.1520 (DIB); 20 C.F.R. § 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each

step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step

sequential process asks the following series of questions:

1.      Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.      Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert,* 482 U.S. at 146 n.5. The Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**D.  The ALJ's Decision**

The ALJ applied the sequential analysis in her April 23, 2013 decision. At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since May 16, 2011, several months after the alleged disability onset date. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disk disease/back injury, left knee injury, fibromyalgia, obesity, and learning disorder. In determining these impairments were severe, the ALJ relied on the medical records from several treating and examining physicians. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments.

The ALJ next assessed Plaintiff's RFC. The ALJ found that Plaintiff has the RFC to perform light work. In determining the RFC, the ALJ considered Plaintiff's medical records and activities of daily living. The ALJ did not find Plaintiff's subjective complaints to be reasonably

consistent with the medical evidence. The ALJ also found that Plaintiff could perform a full range of daily activities, which was inconsistent with the nature, severity, and subjective complaints of the claimant.

At step four, the ALJ relied upon testimony from a vocational expert. The ALJ determined that Plaintiff was able to perform her past relevant work as a cashier.[1] Thus, the ALJ found that Plaintiff was not, as defined by the Social Security Act, from the alleged onset date through the date of the ALJ's decision, April 23, 2013.

## DISCUSSION

Plaintiff seeks review of the determination by the Commissioner that she was not disabled. Plaintiff's supplemental opening brief lists the following errors allegedly committed by the ALJ: (A) improperly weighing the medical evidence; (B) improperly rejecting Plaintiff's symptom testimony; and (C) improperly evaluating lay witness statements.

### A.  Medical Evidence

Plaintiff argues that the ALJ made three errors in evaluating the medical evidence. Plaintiff asserts the ALJ erred by: (1) improperly giving great weight to the testimony of Dr. Darius Ghazi, a "non-examining medical witness"; (2) improperly ignoring the evidence regarding the severity and of Plaintiff's impairments; and (3) failing to address the side effects of Plaintiff's prescription medications;

Social Security regulations distinguish among the opinions of three types of physicians: (1) treating physicians, who treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant, but review the claimant's file. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *see*

---

[1] Because the ALJ found Plaintiff could perform her past relevant work, the ALJ did not perform a step-five analysis.

20 C.F.R. § 404.1527(d). The Ninth Circuit has explained how the Commissioner is to consider

medical evidence. Generally, a treating physician's opinion carries more weight than an

examining physician's, and an examining physician's opinion carries more weight than a non-

examining physician's. *Holohan v. Massinari,* 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R.

§ 404.1527(d). In addition, the regulations give more weight to opinions that are explained than

to those that are not and to the opinions of specialists concerning matters relating to their

specialty over that of non-specialists. *Holohan*, 246 F.3d at 1202; 20 C.F.R. §§ 404.1527(c)(3)-

(c)(5), 416.927(c)(3)-(c)(5). Finally, the testimony of a non-examining medical advisor who

testifies at the hearing and is subject to cross examination is entitled to greater weight than the

opinions of other non-treating, non-examining physicians. *Andrews*, 53 F.3d at 1042; *Lester*, 81

F.3d at 831.

  If a treating physician's medical opinion is not inconsistent with other substantial

evidence in the record, and is supported by medically acceptable clinical findings, it is generally

given controlling weight. *Holohan,* 246 F.3d at 1202; 20 C.F.R. § 404.1527(d)(2). An ALJ need

not, however, accept a physician's opinion that is brief, conclusory, or inadequately supported by

clinical findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Crane v. Shalala*, 76

F.3d 251, 253 (9th Cir. 1996) (ALJ properly rejected check-off reports that did not contain any

explanation of bases for conclusions). If an ALJ chooses to reject the uncontradicted opinion of a

treating physician, he or she must provide "clear and convincing" reasons for doing so. *Baxter v.*

*Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).

  The ALJ is responsible for resolving any conflicts in the medical record, including

conflicts among medical opinions. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164

(9th Cir. 2008). If the opinion of a treating physician is contradicted by another medical source ,

the ALJ must provide "specific, legitimate reasons" supported by substantial evidence in the record for discrediting the opinion. *Lester*, 81 F.3d at 830-31; *Andrews*, 53 F.3d at 1043. Specific, legitimate reasons for rejecting a medical source opinion include reliance on a claimant's discredited subjective complaints and inconsistency with medical records. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The contrary opinion of a non-examining physician cannot by itself justify rejecting the opinion of a treating or examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 n. 4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

### 1. Dr. Ghazi

Plaintiff asserts that the ALJ erred by crediting the opinion of Dr. Ghazi, a non-examining physician who testified at the hearing, with significant weight. At the hearing, the ALJ questioned Dr. Ghazi about Plaintiff's statements that her knee surgeries were unsuccessful and that her patella still slips occasionally. AR 45, 59. Dr. Ghazi stated that the surgery Plaintiff had is generally very effective and opined that Plaintiff may feel as if the patella were slipping even though it is actually well aligned and staying in place. AR 45. Dr. Ghazi explained that he based that opinion on the evaluation of the records of Plaintiff's surgeon, Dr. Edward VanTassel. *Id*. Dr. VanTassel's post-surgery report supported Dr. Ghazi's opinion by noting that Plaintiff had "excellent patellar stability . . . ." AR 271-72. Dr. VanTassel also reported "good alignment" with "[n]o evidence of any lateral subluxation" one month after Plaintiff's surgery. AR 292.

The only specific argument Plaintiff provides to support accrediting Dr. Ghazi's opinion with less weight is that Dr. Ghazi's opinion about Plaintiff's knee pain was subjective rather than objective. An ALJ, however, "must give sufficient weight to the subjective aspects of a doctor's opinion." *Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989) (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). Plaintiff does not cite to any medical evidence in the record

contradicting Dr. Ghazi's testimony and upon reviewing the record, the Court did not find any.

Further, because Dr. Ghazi testified at the hearing and was subject to cross examination, his

opinion is entitled to greater weight than Plaintiff's non-examining, non-testifying physicians.

*Andrews*, 53 F.3d at 1042; *Lester*, 81 F.3d at 831. Considering the record as a whole, the ALJ did

not err in crediting Dr. Ghazi's opinion with significant weight.

### 2. Plaintiff's Treating and Examining Physicians

Plaintiff also contends that the ALJ improperly rejected the opinions and conclusions of

Plaintiff's treating and examining physicians. Plaintiff does not identify any specific physician

whose opinion was allegedly improperly rejected. Plaintiff summarily states that the ALJ ignored

"multiple" medical records relating to Plaintiff's "Patellar Femeral Syndrome, knee surgeries and

injections, a learning disability, bilateral Carpal Tunnel Syndrome, degenerative disc disease,

thyroid nodules and hypothyroidism, depression, and a learning disability [sic]." Plaintiff also

states that the ALJ erred by ignoring the diagnoses of fibromyalgia and chronic fatigue

syndrome. Plaintiff offers no record citations to any purported opinions, records, or diagnoses

that were allegedly improperly rejected.

It is not a Court's role to manufacture legal arguments on behalf of a Plaintiff or scour the

record on her behalf for factual support. *See, e.g.*, *W. Radio Servs. Co. v. Qwest Corp.*, 678

F.3d 970, 979 (9th Cir. 2012) ("We will not do an appellant's work for it, either by

manufacturing its legal arguments, or by combing the record on its behalf for factual support.");

*Sekiya v. Gates*, 508 F.3d 1198, 1200 (9th Cir. 2007) (striking the appellant's opening brief in its

entirety and dismissing the appeal because the brief merely provided the court "with a list of

asserted facts without adequate citation to the record and without any argument or authority").

Plaintiff must provide in her brief specific legal argument and analyses. *See Carmickle v. Astrue*,

533 F.3d 1156, 1161 n.2 (9th Cir. 2008) (refusing to address an issue where the appellant "failed

to argue this issue with any specificity in his briefing"). Nonetheless, the Court did review the record in an attempt to ascertain the contours of Plaintiff's allegations of error.

In making a determination of disability, an ALJ must develop the record and interpret the medical evidence. *See Crane v. Shalala*, 76 F.3d at 255. In doing so, an ALJ must consider the combined effect of all the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. 20 C.F.R. § 416.923. In interpreting the evidence and developing the record, however, an ALJ does not need to "discuss every piece of evidence." *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984); *see also Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) ("The court concluded that the ALJ was not required to discuss every piece of evidence and that the ALJ's decision was supported by substantial evidence."). Rather, an ALJ must explain why "significant probative evidence has been rejected." *Vincent*, 739 F.2d at 735.

Here, some of the evidence Plaintiff asserts that the ALJ ignored pertains to conditions the ALJ discussed and found to be severe impairments. First, with respect to Plaintiff's knee problems, the ALJ discussed both of Plaintiff's knee surgeries, as well as her x-ray results and ongoing pain symptoms and determined that Plaintiff's knee injury was a severe impairment. AR 17, 20, 21 (citing AR 268-291, 310, 335). The ALJ also concluded that Plaintiff's degenerative disc disease was a severe impairment and referenced two separate medical exhibits to support that determination. *Id.* (citing AR 268-91, 312). The ALJ also discussed the medical records showing that these conditions did not result in significant functional limitations. Thus, the ALJ did not ignore these records and his conclusion that with these conditions Plaintiff could perform light work is supported by substantial evidence in the record.

Similarly, the ALJ also specifically addressed Plaintiff's learning disability. Despite the fact that Plaintiff failed to provide any medical evidence of a learning disability, the ALJ noted that Plaintiff's testimony indicated she had a "history of learning problems." AR 17, 22, 84. As such, the ALJ determined that Plaintiff's learning disorder was also a severe impairment at step two and incorporated associated limitations into Plaintiff's RFC at step four. AR 17, 19 (Plaintiff's RFC states that Plaintiff is limited to one-to-three-step tasks with no detailed work.). Plaintiff does not indicate how the ALJ ignored any significant probative evidence relating to his findings for these three severe impairments. Thus, the Court finds no error.

The remaining records that Plaintiff asserts were ignored were neither significant nor probative. First, Plaintiff submitted voluminous records regarding a thyroid nodule that did not present any evidence of limitation. AR 252-68. Dr. Sean Traynor reported normal thyroid testing and no palpable nodules, but an ultrasound revealed a 1.3 cm nodule on the left side. AR 253-54. Plaintiff had no risk factors for thyroid cancer, but decided to biopsy the nodule. AR 260. Before the alleged disability date, Dr. Patrick R. Hungerford reported that Plaintiff was "very relieved" that her biopsy results were benign and that Plaintiff did not have any neck pain or difficulty swallowing. AR 256. Because there was no indication that Plaintiff's thyroid nodule affected her ability to work, the ALJ's failure to discuss this evidence was not error.

Next, Plaintiff alleged impairments of carpal tunnel syndrome and depression without presenting evidence that either condition caused significant limitation or interfered with her ability to work. For carpal tunnel syndrome, the record indicates that Plaintiff reported hand numbness one time several months before the alleged disability date, underwent a nerve conduction test that was "possibly suggestive of carpal tunnel," and did nothing further. AR 46, 329. For depression, the record indicates Plaintiff reported periodically feeling depressed

and took Cymbalta "off and on" to treat various symptoms. *See* AR 54, 56, 243, 300, 313, 368 (Plaintiff reports taking Cymbalta for back pain, fibromyalgia, migraines and depression, but there is no evidence from her doctors discussing why Cymbalta was actually prescribed). Thus, the ALJ's failure to discuss carpal tunnel syndrome and depression evidence was not error.

Finally, Plaintiff contends that the ALJ ignored her diagnoses of fibromyalgia and chronic fatigue syndrome. Plaintiff includes a bare reference to "SSR 12-2p" after this assertion. Social Security Ruling 12-2p, Evaluation of Fibromyalgia,[2] provides guidance on how to determine whether the evidence establishes a medically determinable impairment of fibromyalgia. Here, the ALJ addressed Plaintiff's fibromyalgia diagnosis and determined it was a severe impairment at step two. AR 17. In assessing Plaintiff's RFC, the ALJ discussed Plaintiff's activities and medical records as being inconsistent with her testimony regarding the nature and severity of her limitations. Regarding Plaintiff's alleged chronic fatigue syndrome, although Plaintiff stated in her Disability Report "I have been told that I probably have chronic fatigue syndrome" there is no medical evidence to support that a diagnosis of chronic fatigue syndrome existed. AR 226. Thus, Plaintiff's claim that the ALJ improperly ignored her diagnoses of fibromyalgia and chronic fatigue syndrome is not supported by substantial evidence in the record.

### 3.  Prescription Side Effects

Plaintiff also argues that the ALJ did not address the side effects of her prescription medications. Although Plaintiff did not argue specifically how the ALJ may have erred in this

---

[2] This document is available at 2012 WL 3104869.

regard, the Court reviewed the record for evidence regarding side effects from Plaintiff's

prescriptions.

An ALJ must consider all factors that have a significant impact on the Plaintiff's ability

to work, including the side effects of medication. *Burger v. Astrue*, 536 F. Supp. 2d 1182, 1188

(C.D. Cal. 2008) (citing to *Erickson v. Shalala*, 9 F.3d 813, 817-18 (9th Cir. 1993); *Varney v.*

*Sec'y of Health & Human Servs.*, 846 F.2d 581, 585 (9th Cir. 1988)). As stated above, however,

the ALJ need not discuss all of the evidence presented in the decision. *Howard*, 341 F.3d

at 1012. Instead, the ALJ must explain why any significant probative evidence was rejected.

*Stark*, 886 F. Supp. at 735.

Here, there was no evidence in the record of side effects from Plaintiff's various

medications severe enough to interfere with Plaintiff's ability to work. Plaintiff reported that

Armour Thyroid caused her to experience hair growth, diarrhea, stomach pain, and dry skin.

AR 210, 222. Plaintiff reported heavy sweating from taking Synthroid. AR 228. Plaintiff

reported that Lyrica caused her to gain weight. AR 60. Plaintiff's Function Report listed both

sleepiness and drowsiness as side effects from Oxycodone, Flexeril, and Cymbalta. AR 188.

Plaintiff's medical records indicated she took these medications "as needed" and "off and on" to

manage her chronic pain, periodic depression, and migraines. AR 300, 311, 313, 368, 372. At the

hearing, Plaintiff stated that she would forgo taking any pain medication if she needed to drive.

AR 54-55. Plaintiff's Disability Reports, however, indicated no side effects from Oxycodone and

no side effects from Cymbalta AR 210, 228.

The medical evidence of side effects from Plaintiff's medications was tantamount to

passing mentions in Plaintiff's medical reports. Plaintiff offers no specific argument, and the

Court found no evidence, of any side effects severe enough to interfere with Plaintiff's ability to

work. Thus, the ALJ did not err by failing to address the side effects of Plaintiff's prescription medication. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001) ("There were passing mentions of the side effects of [Plaintiff's] medication in some of the medical records, but there was no evidence of side effects severe enough to interfere with [Plaintiff's] ability to work.").

## B.  Plaintiff's Testimony

Plaintiff argues that the ALJ improperly rejected her symptom testimony. There is a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid, [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . . ." *Smolen*, 80 F.3d at 1284. The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1997.

Here, Plaintiff asserts that the ALJ rejected her symptom testimony without giving clear and convincing reasons for doing so. Although the ALJ determined that Plaintiff's medically determinable impairments could reasonably cause some of Plaintiff's alleged symptoms, the ALJ also determined that Plaintiff's reports with respect to the intensity, persistence, and limiting effects of her symptoms were not entirely creditable. AR 20.

PAGE 16 – OPINION AND ORDER

The ALJ explained that Plaintiff's complaints were not reasonably consistent with the medical evidence and with Plaintiff's activities of daily living. First, the ALJ determined that the medical evidence indicates Plaintiff's knee surgery showed good healing. *See* AR 20 (citing AR 277) (Plaintiff reported feeling better with daily activities, including doing dishes, mopping, and sweeping); *id.* (citing AR 292) (Plaintiff's examination revealed "no significant swelling" and "full range of motion" and Plaintiff reported "doing well," that she "has no complaints," and that her knee "feels good"); *id.* (citing AR 345) (Plaintiff's "Lower extremities exam is within [normal] limits.").

Next, the ALJ concluded that the medical evidence showed Plaintiff's back problems were mostly normal. *Id.* (citing AR 279) (Plaintiff was a "great candidate for physical therapy," had "normal range of motion," and back pain was "typical of decreased lumbosacral strength"). Finally, the ALJ noted that Plaintiff performed a "full range of daily activities" inconsistent with the severity of her complaints. *See id.* (citing AR 182-89) (Plaintiff reported caring for children and picking up son from the bus stop, preparing dinner in the evening, and performing personal care unassisted).

The ALJ offered three clear and convincing reasons for rejecting claimant's symptom testimony that are supported by substantial evidence in the record. "If the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Thus, the Court finds that the ALJ did not err in evaluating the credibility of claimant's symptom testimony.

## C.  Lay Witness Testimony

Finally, Plaintiff argues that the ALJ rejected third-party testimony without giving specific and germane reasons for doing so. In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work. *Stout v.*

*Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Such testimony as to a claimant's symptoms is competent evidence that the Commissioner must take into account. *Dodrill v. Shalala*, 12 F.3d at 919; *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). An ALJ cannot disregard lay testimony without comment. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). "If an ALJ wishes to discount the testimony of lay witnesses, he [or she] must give reasons that are germane to each witness." *Dodrill*, 12 F.3d 915 at 919.

Here, Plaintiff's mother-in-law stated that Plaintiff "can't sit or stand for any length of time." AR 245. A friend of Plaintiff's also stated that Plaintiff "can't sit for any length of time or stand up for any length of time." AR 247. Plaintiff's father stated that Plaintiff "does not have the ability to stand and lean over the sink" to do dishes. AR 246. Plaintiff's husband stated that Plaintiff is "unable to sit in a boat and fish" or "hunt and walk" with him anymore. AR 248. A co-worker stated, "Both standing and sitting for extended periods of time caused her great anguish." AR 249. This testimony contradicts the ALJ's determination that Plaintiff had the RFC to sit for up to six hours and stand/walk for up to four hours. AR 19.

The ALJ discussed all of the lay testimony. AR 21. The ALJ explained that the "objective evidence . . . does not support limitations to the degree reported" in the lay testimony. *Id.* The ALJ noted that Plaintiff's medical records indicate improvement following her knee surgery and that Plaintiff's back problem did not require back surgery. *Id.* Thus, the ALJ assigned the third party reports only "some weight." *Id.* The Court finds that the ALJ provided reasons germane to each witness's testimony and, therefore, did not err in rejecting the lay witness testimony. *Dodrill*, 12 F.3d 915 at 919.

**CONCLUSION**

The Commissioner's conclusion that the Plaintiff was capable of performing past relevant work is based on the proper legal standards and the findings are supported by substantial evidence in the record. The Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 25th day of November, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge